1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

11  MICHAEL J. MYLES,                    )  Case No. CV 05-2645-OP
                                         )
12                    Plaintiff,         )
                                         )
13          vs.                          )  MEMORANDUM OPINION; ORDER
                                         )
14  JO ANNE B. BARNHART,                 )
    Commissioner of Social Security,     )
15                                       )
                      Defendant.         )
16  _____ )

17          On April 11, 2005, plaintiff, Michael J. Miles, lodged for filing a Complaint

18  seeking review of the Commissioner's denial of his application for Disability

19  Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits.

20  On April 28, 2005, plaintiff filed an Amended Complaint seeking the same relief.

21          On January 26, 2006, in accordance with the Court's Case Management

22  Order, the parties filed a Joint Stipulation.  Thus, this matter now is ready for

23  decision.[1]

24  _____

25          [1]      As the Court advised the parties in its Case Management Order, the

26  decision in this case will be made on the basis of the pleadings, the administrative

27  record, and the Joint Stipulation filed by the parties.  In accordance with Rule 12(c)

    of the Federal Rules of Civil Procedure, the Court will determine which party is

28  entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

1

1  This Memorandum Opinion shall constitute the Court's findings of fact and
2  conclusions of law.

3  **BACKGROUND**

4  As reflected in the July 22, 2004, hearing decision (Administrative Record
5  ("AR") at 21-25), the Administrative Law Judge ("ALJ") found that plaintiff
6  suffered from medically determinable impairments (*i.e.*, "spinal arterial venous
7  malformation ["AVM"] and status post lumbar laminectomy and discectomy")
8  which in combination were "severe."  However, the ALJ further found that
9  plaintiff's impairments did not, singly or in combination, meet or equal the criteria
10 of any of the impairments listed in Appendix 1, Subpart P of the Commissioner's
11 regulations ("Listing of Impairments" or "Listing"); that plaintiff's statements
12 concerning his impairments and their impact on his ability to work were not
13 entirely credible ("subjective complaints and alleged limitations are out of
14 proportion to the objective clinical findings and observed functional restrictions");
15 and that plaintiff retained the residual functional capacity ("RFC") to perform the
16 full range of sedentary work, i.e., lift and carry 20 pounds occasionally and 10
17 pounds frequently (*see* n.6, *infra*), stand and/or walk for 2 hours with a restriction
18 to occasional climbing, balancing, stooping, kneeling, crouching, and crawling
19 activities, and sit for 6 hours in an 8-hour day.  (AR at 22-25).  Consequently, the
20 ALJ concluded that plaintiff had not been under a "disability" as defined in the
21 Social Security Act at any time through the date of the ALJ's decision and was,
22 thus, not eligible for DIB or SSI.  (*See* AR at 24-25).

23 Plaintiff timely filed a request with the Appeals Council for review of the
24 ALJ's decision.  (*See* AR at 13).  On March 15, 2005, the Appeals Council advised
25 that the ALJ's decision would stand as the final decision of the Commissioner in
26 plaintiff's case.  (AR at 5).  The Appeals Council further advised that, in reaching

27
28

1  its decision, it also had considered the additional evidence submitted by plaintiff.[2]

2  (*See* AR at 5-6.)

3      Where, as here, the Appeals Council considers additional evidence but

4  denies review, the additional evidence becomes a part of the Administrative

5  Record for purposes of the Court's analysis.  *See Penny v. Sullivan*, 2 F.3d 953, 957

6  n.7 (9th Cir. 1993); *accord Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992);

7  *see generally* 20 C.F.R. §§ 404.970(b), 416.1470(b).

8      The timely filing of the current action followed.

9                          **DISPUTED ISSUES**

10     As reflected in the Joint Stipulation, the disputed issues which plaintiff is

11 raising as the grounds for reversal and/or remand are as follows:

12     1.     Whether the ALJ properly determined that plaintiff did not meet any

13            Listing.

14     2.     Whether the ALJ properly evaluated plaintiff's testimony.

15

16

17

18

---

19     [2]     Subsequent to the administrative hearing, plaintiff obtained and

20 submitted to the Appeals Council additional medical records from Harbor-UCLA

21 Medical Center, plaintiff's treating physicians at least since 2001.  (*See* AR at 199-
   201).  The additional medical records from Harbor-UCLA – a Disability Statement

22 and an Outpatient Clinical Report from early 2005 – included a finding that

23 plaintiff was "permanently and totally disabled" as a result of paraparesis
   secondary to spinal AVM.  (AR at 199).  In its decision adopting the ALJ's

24 decision, the Appeals Council stated that it had considered the additional submitted

25 evidence, but the additional evidence did not provide a basis for changing the

26 ALJ's decision. (AR at 5-6).  The Court believes that the evidence submitted to the

27 Appeals Council relates back in time to the entire period considered by the ALJ
   and that the evidence further supports finding a significant impairment in

28 plaintiff's ability to perform work.

3

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); *Desrosiers v. Secretary of Health & Human Servs.*, 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The Court must review the record as a whole and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).

**DISCUSSION**

For the reasons discussed below, the Court is unable to affirm the Commissioner's decision.

**A.     The Court is unable to affirm the ALJ's determination that plaintiff did not meet the disability requirements in the Listings.**

**1.     The standard for disability under the Listing of Impairments**

The Commissioner's Listing of Impairments sets forth certain impairments which are presumed to be of sufficient severity to prevent the performance of work. *See* 20 C.F.R. § 404.1525(a). If a claimant has an impairment which meets or equals a listed impairment, disability is presumed, and benefits are awarded. *See* 20 C.F.R. § 404.1520(d); *Barker v. Secretary of Health & Human Servs.*, 882 F.2d 1474, 1477 (9th Cir. 1989).

The claimant has the burden of proving disability, including disability based on the Listing of Impairments. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir.

4

1    1995); *Vick v. Comm'r of Social Sec. Admin.*, 57 F. Supp. 2d 1077, 1087 (D.Or.

2    1999).  The mere diagnosis of a listed condition does not establish that a claimant

3    "meets" the Listings.  *Young v. Sullivan*, 911 F.2d 180, 183-84 (9th Cir. 1990).

4    "For a claimant to show that his impairment matches a listing, it must meet *all* of

5    the specified medical criteria.  An impairment that manifests only some of those

6    criteria, no matter how severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S.

7    521, 530, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) (emphasis in original); *see also*

8    20 C.F.R. §§ 404.1525(d).  Thus, the ALJ must find that the claimant has an

9    impairment which corresponds in diagnosis, severity, and duration to a listed

10   impairment.

11       Here, plaintiff contends that his medically determinable impairments met (or

12   equaled) Listing 1.04A.[3]  (Joint Stipulation at 3-5; 7-10).  In his decision, the ALJ

13   failed to specify which listing(s) he considered.

14                    a.    **<u>Listing 1.04A</u>**

15       Listing 1.04 is the Listing for "disorders of the spine."  The Commissioner

16   does not dispute that plaintiff's condition falls within this category.  (*See* Joint Stip.

17   at 6).  Subsection A of Listing 1.04 requires  "[e]vidence of nerve root compression

18   characterized by neuro-anatomic distribution of pain, limitation of motion of the

19   spine, motor loss (atrophy with associated muscle weakness or muscle weakness)

20   accompanied by sensory or reflex loss and, if there is involvement of the lower

21   back, positive straight-leg raising test (sitting or supine)."  The ALJ concluded that

22   "[t]he medical evidence indicates that the claimant has spinal arterial venous

23   malformation and status post lumbar laminectomy and discectomy, impairments

24

25       [3]    There is also evidence in the record that could support the finding of

26   an impairment under Listing 1.04C.  However, this was not discussed by plaintiff.

27   Consequently, this will not be discussed further herein.  At least one of the
     Department's medical consultants also considered plaintiff's impairment under

28   Listing 11.00.  (*See* AR at 165).

that are 'severe' within the meaning of the Regulations but not 'severe' enough to meet or medically equal, either singly or in combination to one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4."  (AR at 22).

Plaintiff contends that the ALJ's decision lacks the support of substantial evidence because, based on the evidence in the record, a reasonable person could disagree with the ALJ's finding that plaintiff did not meet Listing 1.04A.  (Joint Stip. at 5).  Plaintiff also contends that the ALJ's analysis in that regard was entirely absent.  (*Id.*).  Defendant contends that, under the Ninth Circuit's ruling in *Gonzalez v. Sullivan*, 914 F.2d 1197 (9th Cir. 1990), the ALJ was not required to make specific findings as to why plaintiff failed to satisfy the various criteria of the Listing.  (Joint Stip. at 6).  Plaintiff does not argue that the ALJ was required to explain why he did not meet every different section of the Listing.  Rather, he argues that the ALJ failed to demonstrate how plaintiff did not meet or equal the criteria in section 1.00 of the Listings pertaining to back impairments given the evidence to the contrary.  (Joint Stip. at 5).

After review of the medical record presented, the Court agrees that such a showing was necessary and was not made.

### b.   Evidence in the record relating to Listing 1.04A

The following evidence in the record supports the criteria of Listing 1.04A:

i) Plaintiff is post disc herniation repair presenting with numbness and sharp pain radiating down his right lower extremity from the right thigh to the bottom of the right foot (AR at 135, 153);

ii) There is decreased range of motion in his right lower extremity (AR at 140, 144, 156);

iii) There is decreased range of motion of the spine (AR at 156);

iv) There is motor loss with muscle weakness (AR at 138, 140, 144, 153, 158, 200);

v) There is decreased sensation and/or reflex loss in the right lower

6

extremity (AR at 140, 144, 157, 167);

vi) There is positive straight leg raising (AR at 140, 156);

vii) Plaintiff's treating physicians reported degenerative disc changes in the lumbar region, mild spinal stenosis at the L4-5 level, and ligamentum flavum hypertrophy at the L4-5 level (AR at 146-47); and

viii) Plaintiff's treating physicians have recommended surgery despite the fact it could lead to paralysis (AR at 135);

The following additional evidence may also support this Listing:

i) There is muscle atrophy in the right lower extremity (AR at 157);

ii) Plaintiff is unable to walk 150 feet with his assistive devices (crutches and brace) (AR at 136);

iii) Plaintiff was prescribed 800 mg Motrin q. 8h. p.r.n. for pain (AR at 135);

iv) Plaintiff's treating physician indicated he was able to return to work but was restricted from walking more than a few feet at a time, climbing stairs, lifting or climbing (AR at 192); and

v) Plaintiff's most recent treating physician found him totally and permanently disabled and prescribed Baclofen for spasticity (AR at 199, 200).

**2.      The ALJ's evaluation is not an adequate foundation on which to base his ultimate factual conclusions**

After concluding that plaintiff has "spinal arterial venous malformation and status post lumbar laminectomy and discectomy" (AR at 22), the remainder of the ALJ's "Evaluation of the Evidence" focused exclusively on his finding that the claimant has the RFC to perform the full range of sedentary work and his evaluation of plaintiff's credibility.  (AR at 22-25).  Likewise, the ALJ's limited summary of the medical records focused on whether those records allowed for the full range of sedentary work.  The medical evidence, however, not only fails to support the "full range" finding but more critically fails to support a finding that plaintiff's impairments do not meet or equal the criteria under this Listing.

In *Gonzalez v. Sullivan*, the court concluded that the ALJ's four page evaluation of the evidence was an adequate foundation "on which the ultimate factual conclusions are based" and, therefore, there was no need for the ALJ to discuss why the plaintiff did not meet any of the Listings (step three of the ALJ's analysis).[4] *Gonzales*, 914 F.2d at 1201; *see also Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001) ("*Marcia* [*v. Sullivan*, 900 F.2d 172, 176 (9th Cir.1990)] simply requires an ALJ to discuss and evaluate the evidence that supports his or her conclusion; it does not specify that the ALJ must do so under the heading 'Findings.' ").

Here, in contrast to *Gonzales*, the ALJ's recitation of the evidence does not provide an adequate foundation for his findings in step three of his analysis. Moreover, in determining medical equivalence under step three, the ALJ must adequately explain his comparative evaluation of the applicant's impairment to the listed impairment(s). *Marcia*, 900 F.2d at 176; *see also Galaspi-Bey v. Barnhart*, 2002 WL 31928500, at *3 (N.D. Cal. Dec. 23, 2002) (reversing the ALJ's denial of benefits because the ALJ's discussion "makes no mention of section 1.01 et seq. of the Listings, and does not compare the medical evidence in the record to the criteria in the Listings"); 20 C.F.R. § 404.1526 (2002) (in considering whether an

---

[4]       The ALJ has an independent duty to investigate all issues and to develop a record in order to make a fair determination as to disability – regardless of whether the claimant is represented by an attorney at the hearing. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (*citing Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)).  At step one, the ALJ determines whether the claimant is actually engaged in any "substantial gainful activity"; at step two, the ALJ determines whether the claimed physical and/or mental impairments are "severe"; at step three, the ALJ considers whether claimant's severe impairments are so significant that a presumption of disability is appropriate (*i.e.*, claimant's impairments meet or equal a Listing) (if yes, the analysis stops here); at step four, the ALJ determines whether the claimant can return to his previous work; and at step five, the ALJ determines whether other jobs are available to the claimant.

1  impairment equals a Listing, the regulations require the ALJ to "compare the
2  symptoms, signs, and laboratory findings" about the applicant's impairment with
3  the medical criteria of the listed Impairments, in order to determine if the "medical
4  findings are at least equal in severity and duration to the listed findings.").
5  Although the ALJ specifically found the impairments did not equal a Listing, the
6  ALJ did not make this comparison.

7       This Court finds that, in light of the medical evidence presented, the ALJ did
8  not set forth an adequate foundation sufficient for a reviewing court to determine
9  how he arrived at the conclusion that plaintiff's back impairment, characterized as
10  "severe," did not meet or equal any Listing.  Consequently, the ALJ erred in his
11  analysis at step three.[5]  Where the evaluation does not provide an adequate
12  foundation, remand is necessitated.  *See Santiago v. Barnhart*, 278 F. Supp. 2d
13  1049, 1058 (9th Cir. 2003); *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981)
14  ("If additional proceedings can remedy defects in the original administrative
15  proceedings, a social security case should be remanded.")

16      **3.**    **The medical consultant's opinion was given too much weight by**
17        **the ALJ**

18          **a.**    **The medical consultant's opinions are inconsistent**
19             **and contradictory**

20       Dr. Tamiry, the Department's medical consultant, noted the following:
21  plaintiff walked with crutches and was able to take only 2-3 steps without the
22  crutches (AR at 155); plaintiff walked with an "obvious limping gait on the right
23  lower extremity" (*id.*); plaintiff's gait was "unpredictable" (*id.*); there was limited
24  range of motion on the lumbar spine with positive straight-leg raising on the right

25

26      [5]    It also is persuasive that the Commissioner did not (or could not) point
27  to any definitive portion of the record that would explain the ALJ's determination
   that plaintiff did not meet or equal any Listing – if that reasoning had been clear
28  from the ALJ's opinion, presumably such a showing would have been made.

lower extremity (AR at 156); the range of motion of plaintiff's left ankle was
"limited" with right dorsiflexion 0/20 degrees and plantar flexion 0/40 degrees (AR
at 157); there was mild atrophy in the right lower extremity (*id.*); and decreased
sensation in the right lower extremity (*id.*).  Dr. Tamiry opined that the results of a
recent CT myelogram and MRI from Harbor-UCLA (which he had not seen)
would be "helpful" in determining the residuals of plaintiff's lumbar disc disease.
(AR at 158).  After having already determined that plaintiff was unable to walk
without his crutches, exhibited weakness in the right lower extremity, has constant
low back pain, and having recognized that surgery had been suggested, Dr. Tamiry
then inexplicably concluded that plaintiff was able to "lift[] and carry[] 20 pounds
occasionally and 10 pounds frequently"[6] and could stand and walk for two hours
(*id.*).

      Although the ALJ apparently weighed Dr. Tamiry's opinion heavily in
concluding plaintiff could do the full range of sedentary work, this Court finds Dr.
Tamiry's ultimate conclusions to be of limited value, as they do not seem to relate
in any way to the limitations and findings of Dr. Tamiry's examination, to the
impairments reported to Dr. Tamiry by the plaintiff, and/or to plaintiff's Harbor-
UCLA medical records.  Nor does Dr. Tamiry provide an explanation as to how
plaintiff, who uses crutches to ambulate (unsteadily), and who is in constant pain,
would be expected to walk two hours per day or lift and carry objects weighing 10-
20 pounds.  (*See* 20 C.F.R. § 404, Subpart P, Appendix 1, Listing 1.00 J(4) ("The
requirement to use a hand-held assistive device may also impact on the individual's
functional capacity  by virtue of the fact that one or both upper extremities are not

---

     [6]    This is not even the standard for "sedentary" work – it is the standard
for "light" work.

1  available for such activities as lifting, carrying, pushing, and pulling.")).[7]
2  Nevertheless, the ALJ accepted Dr. Tamiry's opinion over that of the treating
3  physician (who stated no walking for more than a few feet at a time, and no lifting,
4  climbing, or stairs (AR at 192)),[8] concluded that plaintiff could lift 20 pounds
5  occasionally and 10 pounds frequently (*see* n.6, *infra*) (AR at 25), and failed to
6  provide any cogent reason for ignoring the treating physician's opinion.  This
7  result is closely analogous to the result in *Penny v. Sullivan, supra,* where the
8  court found that the ALJ had committed error in numerous steps of his analysis and
9  had ignored substantial evidence of disability.  There, in reaching this result, the
10  court found the opinion of the Department's examining physician to be of "very
11  limited value":

12    We deem it significant that even as Dr. Ross opined that Penny could
13    perform sedentary work, he stated that Penny still suffered lower back
14    pain and radiating leg pain requiring medication and use of a cane and
15    that Penny incurred limitation of activity to a marked degree.  Dr.
16    Ross also stated that Penny has a herniated cervical disc which may
17    require additional surgery.

18  *Penny*, 2 F.3d at 957 n.6.  Dr. Tamiry's conclusions are equally contradictory and
19  inexplicable.  Thus, the Court finds the conclusions to be of very limited value and
20  not worth the weight given to them by the ALJ.

21  _____

22    [7]    Thus, given plaintiff's impairments and need for an assistive device,
23  there does not seem to be substantial evidence to support the ALJ's determination
   that plaintiff had the RFC for a *full* range of sedentary work.  As this issue was not
24  raised, it will not be discussed here.

25    [8]    The Court acknowledges that the treating physician's restrictions were
26  due to be "lifted" in April 2003 but sees no evidence in the record that plaintiff's
   condition had improved after 2003 sufficient to ignore the restrictions in making a
27  disability determination.  In fact, the most recent medical reports show continued
28  deterioration.  (AR at 199).

1

2

       **b.**    **The ALJ failed to state why less weight was being given to the reports of plaintiff's treating physician**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

      It is well established in this Circuit that a treating physician's opinion is entitled to special weight, because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. §§ 404.1527 and 416.927(d)(2). If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996); *Baxter v. Sullivan*, 923 F.3d 1391, 1396 (9th Cir. 1991). Where the treating physician's opinion is controverted by the opinion of other physicians of record, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. *Magallanes*, 881 F.2d at 751; *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987).

19

20

21

22

23

24

25

26

      In this case, the ALJ incorrectly treated the treating physician's opinion as uncontroverted when he concluded that the treating physician and Dr. Tamiry both would allow for sedentary work. (AR at 23). This conclusion completely ignores the fact that the restrictions put on plaintiff by his treating physician were completely contrary to Dr. Tamiry's opinion (*e.g.*, no lifting versus lifting 20 pounds; no walking versus walking up to 2 hours). Thus, the ALJ erred by disregarding the restrictions imposed on plaintiff by his treating physician without providing specific and legitimate reasons for rejecting those assessments.

27

28

**B.**    **The Court is unable to affirm the ALJ's adverse credibility determination.**

12

1    Plaintiff presented written evidence and testified at the administrative
2  hearing about the nature, extent, and resultant limitations stemming from his
3  condition.  In this regard, he testified that, in 1986, he had a laminectomy and
4  discectomy (AR at 51) and, in 2001, after falling of a ladder, he sought treatment at
5  Harbor-UCLA for increasing back pain and difficulty ambulating (AR at 44); he
6  reported constant back pain and stiffness, numbness, and weakness of his joints,
7  especially knees and ankles (AR at 45); he was diagnosed at Harbor-UCLA with an
8  arterial venous malformation and surgery, although suggested, was not
9  recommended as the risk of paralysis was high (AR at 48, 135); he ambulates with
10 crutches and reported that he could not walk a city block or stand unassisted (AR at
11 46); in 2001 he was laid off from work at approximately the same time that his
12 back pain was increasing (AR at 44); he no longer drives as his feet are too numb
13 to distinguish between the pedals (AR at 56-57); he takes 10-12 600 mg Motrin per
14 day and has done so for two years (AR at 53); he is in extreme and constant pain
15 but cannot afford medical treatment (AR at 55, 56); he had not returned to Harbor-
16 UCLA because of an outstanding bill and because he already has their diagnosis
17 and prognosis (AR at 49-50); and his sister is his caretaker and takes care of all his
18 housework and household chores, assisting him with bathing, dressing, shopping,
19 laundry, cooking, and cleaning (AR at 46; 94; 100-105).

20    As one of his ultimate findings, the ALJ found that the plaintiff's
21 "allegations regarding his limitations . . . not totally credible for the reasons set
22 forth in the body of the decision."  (AR at 25).  In the body of the hearing decision,
23 the ALJ provided the following rationale for his adverse credibility determination:

24    In making this [RFC] assessment, the undersigned must consider
25    all symptoms, including pain, and the extent to which these symptoms
26    can reasonably be accepted as consistent with the objective medical
27    evidence and other evidence based on the requirements of 20 CFR §
28    404.1529, and Social Security Ruling 96-7p.  The undersigned must

13

also consider any medical opinions, which are statements from acceptable medical sources, which reflect judgments about the nature and severity of the impairments and resulting limitations (20 CFR §§ 404.1527 and 416.927 and Social Security Rulings 96-2p and 96-6p). However, I do not find the claimant's subjective complaints or his sister's written comments[9] . . . sufficiently credible to warrant restrictions greater than those established by the objective medical record.

The claimant's subjective complaints and alleged limitations are out of proportion to the objective clinical findings and observed functional restrictions as noted above. There is no evidence of severe disuse muscle atrophy that would be compatible with his alleged inactivity and inability to function. The record does not show the severe disabling back problems he alleges. The claimant's subjective

---

[9]    Plaintiff's sister presented written testimony that on a daily basis she assists plaintiff with dressing, cleaning, cooking, bathing, bill paying, laundry, and shopping; that he is unable to stand for any length of time; that he has fallen several times while trying to maneuver with his crutches; and that he suffers pain on a daily basis, sometimes unbearable. (AR at 100-05). This testimony was consistent with the medical evidence and plaintiff's testimony. Without explanation, the ALJ rejected this testimony as not credible. If the ALJ rejects lay witness testimony he must provide reasons germane to the witness whose testimony he rejects. *Smolen  v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (*citing Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). His failure to do so is error. *Id.*; *see also Stout v. Commissioner, Social Security Administration*, 2006 WL 2052306 at *3 (9th Cir. July 25, 2006). Moreover, "where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Id.* at *5. As discussed herein, this Court cannot make such a confident conclusion, therefore, this error was not harmless.

14

> complaints and alleged limitations are not consistent with the
> treatment he receives.  The claimant does not have aggressive
> treatment for the back condition.  Indeed, the record only shows
> yearly evaluations of the claimant's back complaints.  While the
> claimant has an arterial venous malformation, his last examination
> showed pretty good function.  There was 'no lumbar tenderness'.  It is
> reasonable to assume that, if the claimant were as disabled as he
> claims, his doctors would have ordered more aggressive treatment.
> The claimant takes over-the-counter medications.

(AR at 23).[10]

It is well-established in the Ninth Circuit that, where the claimant has
produced objective medical evidence of an impairment or impairments which
could reasonably be expected to produce some degree of pain and/or other
symptoms, and the record is devoid of any affirmative evidence of malingering, the
ALJ may reject the claimant's testimony regarding the severity of the claimant's
pain and/or other symptoms only if the ALJ makes specific findings stating clear
and convincing reasons for doing so.  *See Smolen v. Chater*, 80 F.3d 1273, 1281
(9th Cir. 1996); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Bunnell v.
Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991); *Cotton v. Bowen*, 799 F.2d 1403, 1407
(9th Cir. 1986).  Failure to do so is legal error.  *Cotton*, 799 F.2d at 1408-09.

The ALJ pointed to no affirmative evidence of malingering.  The objective
medical evidence of record establishes that plaintiff suffers from medically

---

[10]    To the extent that the Commissioner has attempted to articulate
possible additional reasons for the ALJ's rejection of plaintiff's subjective
testimony and statements, the Court is compelled to disregard those additional
reasons.  *See Ceguerra v. Secretary of Health & Human Services*, 933 F.2d 735,
738 (9th Cir. 1991) ("A reviewing court can evaluate an agency's decision only on
the grounds articulated by the agency.").

1    determinable impairments which reasonably could be expected to produce pain –
2    *i.e.*, spinal AVM, degenerative changes of the lumbar spine and mild spinal
3    stenosis at the L4-5 level, ligamentum flavum hypertrophy, paraparesis secondary
4    to AVM, and foot drop (AR at 135, 147, 199).  Since the ALJ did not cite any
5    affirmative evidence of malingering in the record, the question before the Court is
6    whether the reasons given by the ALJ for rejecting plaintiff's testimony regarding
7    his back pain and resultant limitations satisfy the legal standard set forth above.
8    The Court answers the question in the negative.

9        First, contrary to his duty under the governing standard, the ALJ failed to
10   specify which statements by plaintiff concerning his back pain and resultant
11   limitations were "not entirely credible."  *See Smolen*, 80 F.3d at 1284 ("The ALJ
12   must state specifically which symptom testimony is not credible and what facts in
13   the record lead to that conclusion.").  Here, without any specificity, the ALJ
14   broadly stated only that he did not find "claimant's subjective complaints . . .
15   sufficiently credible."  (AR at 23).

16       Second, the ALJ's assertion to the effect that plaintiff's allegation of
17   disabling back pain is not credible because it is "out of proportion to the objective
18   clinical findings" imposed a burden on plaintiff which he did not have under the
19   governing Ninth Circuit law.  *See, e.g.*, *Bunnell*, 947 F.2d at 354 (observing that
20   "an [ALJ] may not reject a claimant's subjective complaints based solely on a lack
21   of objective medical evidence"); *Gonzalez*, 914 F.2d at 1201 ("The ALJ's opinion
22   indicates that he probably disbelieved the excess pain testimony because it was
23   'out of proportion to the medical evidence'--an inadequate reason, since it is the
24   very nature of excess pain to be out of proportion to the medical evidence.");
25   *Cotton*, 799 F.2d at 1407 ("Requiring full objective confirmation of pain
26   complaints before believing them 'would overlook the fact that pain is a highly
27   idiosyncratic phenomenon, varying according to the pain threshold and stamina of
28   the individual victim,' and it would trivialize the importance that we have

1    consistently ascribed to pain testimony, rendering it, in the final analysis, almost

2    superfluous.").  Indeed, it appears from the ALJ's statement to the effect that he

3    could not assign "restrictions greater than those established by the objective

4    medical record" that the ALJ may not even have been following the proper legal

5    standard.[11]

6         Third, contrary to the ALJ's statements that "the claimant does not have

7    aggressive treatment for the back condition" and  "[i]t is reasonable to assume that,

8    if the claimant were as disabled as he claims, his doctors would have ordered more

9    aggressive treatment," plaintiff's doctors *have* suggested the most aggressive

10   treatment – surgery – but also have noted that surgery may result in full paralysis.

11   (AR at 135) ("Unfortunately for the patient this particular AVM is in a very

12   precarious area.  Surgery could cause a catastrophic neurologic result such as

13   paralysis.").  Moreover, plaintiff was without insurance or funds to pay for any

14   other treatment for some time.  (AR at 54; 94; 106).  After commenting on

15   plaintiff's lack of aggressive treatment, the ALJ noted that plaintiff "takes over-

16   the-counter medications."  (AR at 23).  To the extent the ALJ is implying that

17   over-the-counter medications are not indicative of "aggressive" treatment or

18   serious pain, the Court disagrees.  In fact, Motrin was prescribed by plaintiff's

19   treating physician for his pain.  (AR at 135).  And, plaintiff reported he was taking

20   10-12 600 mg Motrin tablets per day for two years in an attempt to reduce his pain.

21   (AR at 53).  The fact that plaintiff was taking only over-the-counter medication is

22   not a clear and convincing reason for discrediting his symptom testimony.

23        Finally, although the ALJ referenced Social Security Ruling ("SSR") 96-7p,

24

25        [11]    Moreover, there were clinical findings of muscle weakness, decreased

26   sensation, positive straight leg raising, and muscle atrophy, all consistent with pain

27   symptoms as a result of neurological compromise.  *See* Joint Stipulation at 11 (with

     citations to the record).  During one hospital visit, plaintiff was given morphine for

28   pain.  (AR at 139).

17

1  his decision does not reflect his consideration of the factors specified therein.[12]  *See*

2  *Terry v. Sullivan*, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990) (noting that Social

3  Security Rulings are binding on ALJs).

4       Based on the foregoing, the Court concludes that the ALJ committed legal

5  error, because he did not provide clear and convincing reasons for rejecting

6  plaintiff's subjective symptom testimony.

7  **C.   This case should be remanded for further proceedings.**

8       The law is well established that the decision whether to remand for further

9  proceedings or simply to award benefits is within the discretion of the Court.  *See,*

10  *e.g.*, *Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990); *McAllister*, 888 F.2d at

11  603; *Lewin*, 654 F.2d at 635.  Remand is warranted where additional administrative

12  proceedings could remedy defects in the decision.  *Lewin*, 654 F.2d at 635.

13       Here, the Court notes that: i) the ALJ committed legal error, because he did

14  not properly analyze the evidence for his step three ruling; ii) the ALJ committed

15  legal error, because he did not properly credit plaintiff's pain testimony or provide

16  clear and convincing reasons for finding plaintiff's regarding the severity of his

17

18  _____

19       [12]    SSR 96-7p sets forth seven factors which "the adjudicator must

20  consider in addition to the objective medical evidence when assessing the
   credibility of an individual's statements."  These seven factors are: "1. The
   individual's daily activities; 2. The location, duration, frequency, and intensity of

21  the individual's pain or other symptoms; 3. Factors that precipitate and aggravate

22  the symptoms; 4. The type, dosage, effectiveness, and side effects of any
   medication the individual takes or has taken to alleviate pain or other symptoms; 5.

23  Treatment, other than medication, the individual receives or has received for relief

24  of pain or other symptoms; 6. Any measures other than treatment the individual
   uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her

25  back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7. Any

26  other factors concerning the individual's functional limitations and restrictions due

27  to pain or other symptoms."  SSR 96-7p.  *See* 1996 WL 374186, at *3 (SSA July 2,

28  1996).

pain and/or other symptoms not credible; iii) the ALJ committed legal error because he did not provide specific and legitimate reasons for rejecting the assessments of plaintiff's treating physicians; iv) the ALJ committed legal error because he did not provide reasons germane to the witness for rejecting plaintiff's sister's lay testimony; and v) the January and February 2005 medical opinions from petitioner's treating physician at Harbor-UCLA Medical Center (AR at 199-201) were rendered subsequent to the administrative hearing and, therefore, were not considered by the medical evaluator or the ALJ for purposes of arriving at either the ALJ's step three determination as to whether the impairments meet or equal the medical severity identified in the listings in 20 C.F.R. § 404, Subpart P, Appendix 1, or the RFC determination upon which the ALJ's step four determination was made. Nor do the medical opinions appear to have been adequately considered by the Appeals Council.

Accordingly, it appears to the Court that this is an instance where further administrative proceedings would serve a useful purpose and remedy administrative defects.

/ / /

/ / /

/ / /

/ / /

/ / /

1

**ORDER**

2        Pursuant to sentence four of 42 U.S.C. § 405(g), IT IS HEREBY ORDERED

3 THAT Judgment be entered reversing the decision of the Commissioner of Social

4 Security and remanding this matter for further administrative proceedings

5 consistent with this Memorandum Opinion.

6

7 DATED: July 28, 2006                         **/S/   OSWALD PARADA**
                                              HONORABLE OSWALD PARADA
8                                             United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28